# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SKATTEFORVALTNINGEN,<br><br>                                Plaintiff,<br><br>vs.<br><br>BAREROOT CAPITAL INVESTMENTS LLC ROTH 401(K) PLAN, DAVID ZELMAN, ~~and~~ MICHAEL BEN-JACOB, ROBERT KLUGMAN, RICHARD MARKOWITZ, RAK INVESTMENT TRUST, and ROUTT CAPITAL TRUST,<br><br>                                Defendants. | Civil Action No. ~~————————~~ 19-cv-01783<br><br>Honorable ~~————————~~ Lewis A. Kaplan<br><br>~~February 26, 2019~~<br><br>March 27, 2020<br><br>**AMENDED** COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

        Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Bareroot Capital Investments LLC Roth 401(K) Plan ("**Bareroot**"), David Zelman ("**Zelman**"), ~~and~~ Michael Ben-Jacob ("**Ben-Jacob**"), Robert A. Klugman ("**Klugman**"), individually and in his role as trustee of Defendant RAK Investment Trust, Richard Markowitz ("**Markowitz**"), individually and in his role as trustee of Defendant Routt Capital Trust, RAK Investment Trust ("**RAK**"), and Routt Capital Trust ("**Routt**") as follows:

**I.    INTRODUCTION**

        1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

---

[1].    At the time of the events alleged in this Amended Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff ~~underwent an internal reorganization and~~ changed its legal name to Skatteforvaltningen, effective July 1, 2018.

2.      This case stems from a fraudulent tax refund scheme ~~to deceive~~that deceived SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.      The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders that meet certain qualifications.

4.      The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, ~~they~~ did not earn the dividends they claimed to have earned, and ~~they~~ were not entitled to the tax refunds they claimed. These applications were also fraudulent because the claimants falsely represented that they met the qualifications set forth in the double taxation treaty between Denmark and the United States for a full repayment of the tax withheld on dividends.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications ~~at the direction of, and~~ on behalf of~~,~~ the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and ~~other documentation representing that the claimants~~ were entitled to a tax refund. The agents obtained

2

over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Bareroot, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement

authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.   At least three individuals have been criminally charged by SØIK.

9.       The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a.       The Authorized Representatives of the claimants, such as Defendant Zelman, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.       The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and ~~authorized representatives~~Authorized Representatives; ~~and~~

c.       The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares~~.~~; and

d.       The Partners of the claimants, such as Defendants Klugman, Markowitz, RAK, and Routt (together, the "**Partner Defendants**").   The Partner Defendants are individuals and entities who formed partnerships with the claimants and coordinated the submission of fraudulent tax refund claims to SKAT in exchange for the lion's share of the refunds.   The Partner Defendants helped structure the scheme and reaped the lion's share of the proceeds of the tax refund claims; the claimants ultimately retained approximately 1% to 10% of the refund payments that SKAT made as a result of their false claims.

10.     The Defendants did know or should have known that these ~~arrangements~~false representations would cause SKAT to make payments to which the Defendants were not entitled.

4

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants, in some cases the claimants' Partners, and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 28,899,429, or at least $4,373,000 (US)[2], plus interest.

## II.     JURISDICTION & VENUE

14.      Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.    PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes. SKAT is located at Østbanegade 123, 2200 København Ø, Denmark. During the period material to the events described in this Amended Complaint,

---

[2].   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Bareroot is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA. On information and belief, each participant, or member, of Defendant Bareroot is a citizen of a State of the United States. At all times material to the allegations in this Amended Complaint, Defendant Bareroot purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Zelman is a citizen of the State of Texas. At all times material to the allegations in this Amended Complaint, Defendant Zelman was the sole participant in and served as the Authorized Representative for Defendant Bareroot.

19.     Defendant Ben-Jacob is a citizen of the State of New York. At times material to the allegations in this Amended Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant Bareroot in its fraudulent refund claims to SKAT.

20.     Defendant Klugman is a citizen of the State of Connecticut. At all times relevant to the allegations in this Amended Complaint, Defendant Klugman owned, controlled, and was the sole trustee for Defendant RAK, and used Defendant RAK to participate in the submission of fraudulent refund claims to SKAT.

21.     Defendant Markowitz is a citizen of the State of New York. At all times relevant to the allegations in this Amended Complaint, Defendant Markowitz owned, controlled, and was

6

the sole trustee for Defendant Routt, and used Defendant Routt to participate in the submission of fraudulent refund claims to SKAT.

22.  Defendant RAK is a trust that formed a partnership with Defendants Bareroot and Routt.  Defendant RAK is associated with non-party Stor Capital Consulting LLC 401(K) Plan, which, in the plan's requests to SKAT for tax refunds, listed its address as 200 Henry Street, Apartment 1501, Stamford, CT 06902, which is also Defendant Klugman's former Connecticut home address.  On information and belief, Defendant Klugman is the sole trustee and beneficiary of Defendant RAK, and the sole participant, or member, of Stor Capital Consulting LLC 401(K) Plan.

23.  Defendant Routt is a trust that formed a partnership with Defendants Bareroot and RAK.  Defendant Routt is associated with non-party Routt Capital Pension Plan, which, in the plan's requests to SKAT for tax refunds, listed its address as 1010 Fifth Avenue, Apartment 1D, New York, NY 10028, which is also Defendant Markowitz's current or former New York home address.  On information and belief, Defendant Markowitz is the sole trustee and beneficiary of Defendant Routt, and the sole participant, or member, of Routt Capital Pension Plan.

IV.  **FACTUAL ALLEGATIONS**

   A.  **The Danish Withholding Tax System**

24.  Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

25.  Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

7

26.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

27.     A double taxation treaty between Denmark and the United States[3] ("the Treaty") allows for a full refund of tax withheld on dividends paid by Danish companies to qualified U.S. pension plans, which are exempt from taxation. In order to qualify for a full refund under the Treaty, the U.S. pension plans must possess tax-qualified status under section 401(a) of the Internal Revenue Code and the dividend serving as the basis of the refund request cannot arise from the carrying on of a business by the pension fund. For the reasons set forth in further detail below, the pension plan claimants, including Defendant Bareroot, did not satisfy these requirements and were therefore not entitled under the Treaty to the refunds they claimed from SKAT.

28.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they were qualified pension plans, had shareholdings in Danish companies, and that they had received dividends on those shareholdings net of the tax. The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

29.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

[3].    Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.      **The Fraudulent Scheme**

30.      As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 38 through 56 79 below.

1.      **The Fraudulent Refund Claims Process**

31.      The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Syntax GIS ("**Syntax**"), each of which submitted claims by mail or by email transmissions.

32.      The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

33.      Each of the claimants provided the following documentation to SKAT through their designated agents:

a.      a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.      a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.      the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.      the amount of the tax refund claim;

iii.      a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

     iv.  the bank account to which SKAT should pay the claim;

   c.  a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

   d.  a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

   e.  in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

34. By filing a refund application requesting the full 27% refund and enclosing the statement from the IRS, the United States pension plan claimants falsely represented to SKAT that they were qualified U.S. pension plans entitled to the maximum refunds provided by the Treaty.

35. The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

36. It was SKAT's practice to pay claims that included the required supporting documentation.

37. SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

   **2.**  **The Role of the Claimants**

38. Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

39.     Each of the claimants, including Defendant Bareroot, made withholding tax refund claims through their Payment Agents, as described in paragraph ~~29~~33, above.

40.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the claimants with respect to the dividend withholding tax refund claims.  Defendant Bareroot represented that Defendant Zelman was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Bareroot's claims.

41.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim.  Defendant Bareroot represented that non-party Syntax was its agent and had authority to act on its behalf with respect to its claims.

42.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Bareroot made fifteen (15) withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 28,899,429, or at least $4,373,000 (US).  These refund claims were submitted to SKAT on the following dates: October 28, 2014; April 16, 2015; April 21, 2015; April 23, 2015; April 28, 2015; and May 15, 2015.

43.     In fact, Defendant Bareroot did not ~~hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.~~own the shares it represented to SKAT that it owned, and had no dividend tax withheld.

44.     In addition to falsely representing that it owned the shares that were the subject of the refund claims, Defendant Bareroot falsely represented to SKAT in each refund claim that it was a qualified U.S. pension plan entitled to a full refund under the Treaty.  This representation

11

was false because Defendant Bareroot did not meet the criteria for a qualified pension plan set forth in section 401(a) of the Internal Revenue Code and purportedly carried on debt-financed activities in breach of the Treaty's prohibition on such activities by a pension plan.

45.     Far from being a qualified pension plan, Defendant Bareroot was a sham entity sponsored by a shell company, non-party Bareroot Capital Investments LLC. Defendant Bareroot was created solely for the purpose of submitting false refund claims to SKAT to advance the Defendants' fraudulent scheme. Bareroot Capital Investments LLC conducted no trade or business and had no employees. Further, Bareroot Capital Investments LLC and Defendant Bareroot were both established shortly before Defendant Bareroot submitted its first refund claim to SKAT. As a result, Defendant Bareroot cannot have satisfied the requirements in section 401(a) of the Internal Revenue Code to be a qualified pension plan.

46.     Defendant Bareroot's representation that it was a qualified pension plan was false because it did not operate for the exclusive benefit of the sponsoring entity's employees and their beneficiaries. Bareroot Capital Investments LLC did not conduct any trade or business, did not have any employees, and did not operate exclusively for the benefit of its employees. Rather, Defendant Bareroot was maintained principally for the benefit of its custodians, Telesto Markets LLP and Old Park Lane Capital PLC, the Partner Defendants, and/or other entities and individuals who were participants in the fraud. After SKAT paid the amount requested in Defendant Bareroot's refund claims, the plan subsequently directed or permitted the transfer of the large majority of the illicit proceeds of the scheme to these other individuals and entities.

47.     Defendant Bareroot's representation that it was a qualified pension plan was also false because it was not established with the intent that it be a "permanent" program. Defendant Bareroot was created for the sole purpose of serving as a vehicle for making fraudulent refund

claims to SKAT, and was only intended to operate for as long as the fraudulent scheme was undiscovered and ongoing.

48.     Defendant Bareroot's representation that it was a qualified pension plan was also false because it was not properly funded.   As an entity established by a shell corporation that conducted no trade or business and therefore had no employees, Defendant Bareroot cannot have obtained funding from a proper source and cannot have complied with the contribution rules in section 401(a) of the Internal Revenue Code.   To the extent that Defendant Bareroot received funding from sources outside of its plan sponsor, such activity would similarly violate the funding requirements of the Internal Revenue Code and disqualify Defendant Bareroot from being a qualified pension plan.

49.     Defendant Bareoot also falsely represented to SKAT that it was entitled to a full refund under the Treaty to the extent that it engaged in any activities that were debt-financed, in breach of the Treaty's prohibition on the carrying on of leveraged investment activities by a pension fund.

50.     Based on the false ~~representations in the~~ refund claims ~~listed in paragraph 37~~described in paragraphs 42-49, SKAT made payments totaling DKK 28,899,429, or at least $4,373,000 (US), to Defendant Bareroot on the following dates:  November 10, 2014; May 8, 2015; May 27, 2015; and July 6, 2015.

51.     On information and belief, Defendant Zelman caused Defendant Bareroot's fraudulent claims to be submitted to SKAT.  Defendant Zelman exerted control over Defendant Bareroot as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Zelman was the sole participant in five different pension plans that submitted fraudulent refund claims to SKAT.

### 3.      The Role of the Partner Defendants

52.      Defendant Klugman, using Defendant RAK, formed partnerships with at least 26 different pension plan claimants, including Defendant Bareroot.  Thirteen of these partnerships included an entity owned and controlled by Defendant Markowitz as a third partner, and the other thirteen included an entity owned and controlled by non-party John van Merkensteijn.  Defendant Markowitz, using Defendant Routt or other entities, formed partnerships with at least 28 different pension plan claimants (either directly or with an identically named trust created for the plan), including the thirteen partnerships he formed with Defendant Klugman.  Through these partnerships, Defendants Klugman and Markowitz caused the fraudulent refund claims to be submitted to SKAT.

53.      In exchange for their participation in the fraudulent scheme through these partnerships, the Partner Defendants received the lion's share of the refunds, while the pension plan Defendants retained only a small percentage of the refunds.  The Partner Defendants received the large majority of the refunds despite the fact that they were not members of the pension plans that purported to own shares in Danish companies and to be entitled to refunds from SKAT.

54.      For example, pursuant to the "Bareroot Capital Investments General Partnership" formed between Defendants Bareroot, RAK, and Routt, Defendant Klugman received 25% (through Defendant RAK) of the refund amounts initially obtained by Defendant Bareroot, Defendant Markowitz received 70% (through Defendant Routt), and Defendant Bareroot only kept 5%.

55.      Through this partnership, the Partner Defendants conspired with Defendant Bareroot to defraud SKAT.  The Partner Defendants were instrumental in setting up the fraudulent scheme, and coordinated the creation and submission to SKAT of the fraudulent documents purporting to show Defendant Bareroot's ownership of Danish shares.

14

56.     Defendant Klugman executed Defendant RAK's trust formation document on May 14, 2014.  Defendant Klugman signed the trust formation document as the "Trustee" of Defendant RAK.

57.     In addition to partnering with Defendant Bareroot and 25 other pension plan claimants, Defendant Klugman was the sole participant in five additional pension plans that submitted fraudulent refund claims to SKAT.

58.     Defendant Markowitz executed Defendant Routt's trust formation document on February 19, 2014.  Defendant Markowitz signed the trust formation document as the "Trustee" of Defendant Routt.

59.     In addition to partnering with Defendant Bareroot and 27 other pension plan claimants, Defendant Markowitz was the sole participant in six additional pension plans that submitted fraudulent refund claims to SKAT, including non-party Routt Capital Pension Plan, and was a participant with three other individuals in three additional plans.

60.     Each of Defendant Markowitz's wife, his sister, and his brother-in-law, was the sole participant in a pension plan that submitted fraudulent refund claims to SKAT.

61.     Defendant Markowitz signed Power of Attorney documents as the Authorized Representative of at least four different claimants that submitted fraudulent refund claims to SKAT.

62.     At times relevant to the allegations in this Amended Complaint, Defendant Markowitz served as a Director of a financial services firm based at 40 West 57th Street, 20th Floor, New York, NY 10019.  At least nine different claimants listed that firm's West 57th Street address in their fraudulent refund claims to SKAT.

### 4.    The Role of the Claimants' Authorized Representatives

63.    Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."   By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

64.    At the direction of, and onOn behalf of, Defendant Bareroot, Defendant Zelman caused the execution of a "Limited Power of Attorney" dated August 7, 2014, that granted to Payment Agent Syntax authority to be Defendant Bareroot's "true and lawful attorney-in-fact and agent[] to sign and file with applicable authorities any and all applications, requests, or claims for refund, reduction, repayment, and credit of, or exemption or relief from, any withholding or similar taxes in any jurisdiction."   Defendant Zelman described himself as the "Authorized Representative" of Defendant Bareroot.

65.    As a result of the executed Limited Power of Attorney, Payment Agent Syntax also agreed to act for Defendant Zelman and be subject to his direction and control with respect to Defendant Bareroot's claims to SKAT.

66.    In addition to Defendant Bareroot, Defendant Zelman served as the Authorized Representative for at least two other claimants, which, in their fraudulent requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 425 Park Avenue, New York, NY 10022.

67.    Defendant Ben-Jacob signed the Limited Power of Attorney document as Defendant Zelman's "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims.  Defendant Ben-Jacob also allowed Defendant Bareroot to use his office address of 425 Park Avenue, New York, NY 10022 as Defendant Bareroot's address on the claims listed in paragraph 3742.

16

68.     Defendants Ben-Jacob and Zelman caused the execution of the Limited Power of Attorney with knowledge that the plan was a sham, was established by a shell entity with no business or trade or employees, was not properly funded, was not a permanent program, was not established for the exclusive benefit of its sponsor's employees, and was not entitled to a refund under the Treaty.

69.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

70.     Defendant Ben-Jacob also participated in the fraudulent scheme by, among other things, signing Power of Attorney documents on behalf of the Authorized Representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Zelman with regard to Defendant Bareroot's fraudulent claims to SKAT.

71.     In addition to Defendant Bareroot, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 5.     The Role of the Payment Agents

72.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

73.     By means of the Power of Attorney described in paragraphs 41 through 4563-64 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

74.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above33 above.  Payment Agent Syntax's

17

cover letter, submitted at the direction of and on behalf of Defendants Bareroot and Zelman, also contained the false statement that the plan was a "qualifying US pension fund" within the meaning of the Treaty, and was therefore entitled to a "complete refund of Danish Dividend Tax." Additionally, the documentation submitted with the cover letter falsely represented to SKAT that Defendant Bareroot was a qualified pension plan that satisfied the criteria under the Treaty and was therefore entitled to a full 27% refund.

75.    In connection with each Claim Form, the Payment Agent:

a.    provided its email address as the contact address for the claimant on whose behalf it was acting;

b.    signed and stamped the form, and stated it was applying on behalf of the claimant;

c.    enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.    requested that SKAT pay the claim to its bank account.

76.    As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, the Partner Defendants, and the Payment Agents themselves.

**6.    The Role of the Broker-Custodians**

77.    Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to

show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

78.     By way of example, with respect to Defendant Bareroot, one example of a "Credit Advice":

       a.     is made out by Telesto Markets LLP;

       b.     is dated May 11, 2015;

       c.     purports to certify Defendant Bareroot's ownership of 294,163 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

       d.     states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".   An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

79.     Defendant Bareroot, which was not a qualified U.S. pension plan for purposes of the Treaty, never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

### COUNT I

**(Fraud – Against Defendants Bareroot and, Zelman, Klugman, Markowitz, RAK, and Routt)**

80.     SKAT repeats and realleges paragraphs 1 through 5679 above as if fully set forth herein.

81.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs ~~29-30, 37~~33 through 35, 42 through 49, and ~~54~~77 through ~~56~~79 to support claims for withholding tax refund payments.

82.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims, including through a civil conspiracy in furtherance of the fraud.

83.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 28,899,429, or at least $4,373,000 (US), and thereby suffered damages of that amount, plus interest.

84.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

<u>**COUNT II**</u>

**(Aiding and Abetting Fraud – Against All Defendants)**

85.     SKAT repeats and realleges paragraphs 1 through ~~61~~84 above as if fully set forth herein.

86.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

87.     As alleged in paragraphs ~~26~~30 through ~~56~~79 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

88.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

89.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs ~~26~~30 through ~~56~~79 above.

20

90.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

91.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

92.     SKAT repeats and realleges paragraphs 1 through ~~68~~91 above as if fully set forth herein.

93.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

94.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

95.     SKAT's mistaken belief was material to its decision to pay the claims.

96.     SKAT suffered a loss as a result of its mistaken payments.

97.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

98.     SKAT repeats and realleges paragraphs 1 through ~~74~~97 above as if fully set forth herein.

99.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

95455641_195455641_1

100.    By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

101.    SKAT suffered a loss because of the Defendants' unjust enrichment.

102.    The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

103.    SKAT repeats and realleges paragraphs 1 through ~~79~~102 above as if fully set forth herein.

104.    As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

105.    It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Defendants Bareroot ~~and~~, Zelman, Klugman, Markowitz, RAK, and Routt)

106.    SKAT repeats and realleges paragraphs 1 through ~~82~~105 above as if fully set forth herein.

107.    ~~Defendants had a duty, as a result of their submission of~~In submitting claims for withholding tax refund payments, Defendants had a duty to SKAT to provide claims information that was truthful, accurate, and complete ~~information to SKAT~~ in all material respects ~~concerning their applications for such payments~~.

108.     Defendants made material misstatements described in paragraphs ~~29-30,  37,~~33 through 35, 42 through 49, and ~~54~~77 through ~~56~~79 above in connection with ~~every~~the withholding tax refund ~~claim~~claims  they submitted ~~on behalf of Defendant Bareroot~~or caused to be submitted to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

109.     Defendants~~'~~ intended their material misstatements ~~were intended~~ to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

110.      SKAT  reasonably  relied  on  the  misstatements  while  reviewing  Defendants' claims,  and as a direct and proximate  result incurred damages of DKK 28,899,429,  or at least $4,373,000  (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE,  Plaintiff SKAT requests that this Court enter judgment  in its favor against Defendants as follows:

1.     For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation,  the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment  interest, fees, costs and expenses.

2.     For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly  enriched, or by which the Defendants received money to which they were not entitled,  plus  pre-judgment  interest, fees, costs and expenses.

3.     For Counts I and II, punitive  damages.

4.     The costs of this action.

5.     All other and further relief that is just and proper.

95455641_195455641_1

**JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ ~~Sarah. L. Cave~~ William  R. Maguire

William  R. Maguire
Marc A. Weinstein
~~Sarah L. Cave~~
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000  (t)
(212) 422-4726  (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com ~~Sarah.cave@hugheshubbard.com~~
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration  of the
Kingdom  of Denmark)

25

Document comparison by Workshare 9.5 on Friday, March 27, 2020 1:48:54 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\brennern\Downloads\Original Complaints for Greg\Bareroot NY Complaint.DOCX |
| Description | Bareroot NY Complaint |
| Document 2 ID | file://C:\Users\brennern\Downloads\Redlines for Greg\Bareroot Amended Complaint.DOCX |
| Description | Bareroot Amended Complaint |
| Rendering set | HHR STRIKETHROUGH |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 122 |
| Deletions | 61 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 183 |